**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| C-CATION TECHNOLOGIES, LLC,<br><br>      *Plaintiff*,<br> v.<br><br>COMCAST CORPORATION, CHARTER COMMUNICATIONS, INC., CEQUEL COMMUNICATIONS, LLC dba SUDDENLINK COMMUNICATIONS, CABLE ONE, INC., ALMEGA CABLE INC., LONGVIEW CABLE TELEVISION COMPANY, INC., AND KILGORE VIDEO, INC.<br><br>      *Defendants*. | **Case No. 2:11-CV-30-JRG-RSP** |

**C-CATION TECHNOLOGIES, LLC'S
<u>REPLY CLAIM CONSTRUCTION BRIEF</u>**

.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

I.     INTRODUCTION .............................................................................................................. 1

II.    ARGUMENT ...................................................................................................................... 1

            1.    "a shared transmission means for signalling data and user information" (claim 1) / "a shared transmission means" (claim 6) .................................. 1

            2.    "user information" (claim 1) ........................................................................ 2

     B.   "Signalling Data Channel" and "Signalling Data" .................................................. 2

            1.    "signalling data channel" (claims 1, 3, 4, 5, 6 and 7) ................................. 3

            2.    "signalling data" (claim 1) .......................................................................... 3

     C.   "Remote Terminals" (Claims 1, 3, 4, 6, 7, 10 and 12) ............................................. 5

     D.   Channel Assignment Steps ...................................................................................... 5

            1.    "pair of predetermined signalling data channels" (claims 1, 4 and 5) ........ 5

            2.    "predetermined signalling data channels of a plurality of signalling data channels" / "each of said plurality of remote terminals can be assigned to any pair of said plurality of signalling data channels" (claim 6) ................ 7

     E.   Monitoring and Reassignment of Channels Steps ................................................... 7

            1.    "monitoring the status of a plurality of the signalling data channels in use . . . for the usability of said signalling data channels" (claim 1(b)) .............. 7

            2.    "determining whether one of said plurality of remote terminals needs to be reassigned" (claim 1(c)) ............................................................................... 8

            3.    "is available" (claims 1 and 5) ..................................................................... 9

            4.    "said predetermined signalling data channel" (claims 1 and 4) / "said predetermined channel" (claims 1 and 5) ................................................... 9

            5.    "reassigning by said central controller said remote terminal to a different and suitable signalling data channel" (claim 1) .......................................... 9

            6.    "new signalling data channel" (claim 5) ................................................... 10

    F.       Polling and Resolving Contention (claims 6 and 7) ............................................ 10

           1.       "polling a plurality of said plurality of remote terminals simultaneously" (claim 6) ................................................................................................ 10

           2.       "resolving contention . . . by said central controller if there is a pending request from more than one remote terminal on the same signalling data channel" (claim 6).................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alcon Research, LTD. v. Apotex Inc.*,
    687 F.3d 1362 (Fed. Cir. 2012) ................................................................................ 8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) .................................................................................. 1

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
    672 F.3d 1270 (Fed. Cir. 2012) ............................................................................ 7, 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......................................................... 4, 10

*ResQNet.Com, Inc. v. Lansa, Inc.*,
    346 F.3d 1374 (Fed. Cir. 2003) ............................................................................. 10

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008) ................................................................................ 6

*Synqor, Inc. v. Artesyn Technologies,Inc.*,
    2:07-CV-497-TJW-CE, 2010 WL 2991037 (E.D. Tex. July 26, 2010) ............................ 9

.

**I.      INTRODUCTION**

Defendants' Responsive Brief confirms that they seek claim constructions that are at odds with the intrinsic evidence, improperly import limitations from the specification, and/or are contrary to the ordinary meanings of the identified terms.

**II.     ARGUMENT**

   **A.     Preamble Terms**

   **1. "a shared transmission means for signalling data and user information" (claim 1) / "a shared transmission means" (claim 6)**

Defendants seek to improperly limit the meaning of the "shared transmission means" terms. As an initial matter, these terms only appear in the preambles of claims 1 and 6. Unless a preamble is relied on during prosecution to overcome prior art, it "generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). Here, defendants have not, and cannot, point to any arguments made during prosecution where applicant relied on the "shared transmission means" terms to overcome prior art. Further, defendants have not, and cannot, assert that deleting the "shared transmission means" terms would affect the claimed invention.

In any event, even if the Court considers these terms to be limiting, they would have been well understood by one of ordinary skill in the art[1] at the time of the invention as connoting structure such as airwaves, cable, or wires through which transmissions occur. *See* Op. Br. at 6-7. Defendants have not offered any evidence to the contrary.

If the Court determines that these terms should be construed under § 112 ¶ 6, defendants'

---

[1] Defendants did not contest the definition of a person of ordinary skill in the art provided in C-Cation Tech's Opening Claim Construction Brief. Hereafter, "Op. Br." refers to C-Cation Tech's Opening Claim Construction Brief, filed as D.I. 187.

proposed function and structure should not be adopted. For example, defendants fail to explain how their proposed function of "a shared transmission means" as "carrying both signalling data and user information" is connected to the claim language as is required. *See* Op. Br. at 8.

### 2. "user information" (claim 1)

C-Cation Tech maintains that "user information" does not need to be construed for two reasons: (i) it is part of the preamble and, therefore is not limiting; and (ii) even if it is determined to be a limiting, its meaning is clear. *See* Op. Br. at 10. Defendants do not attempt to rebut either of these reasons.

Instead, defendants' proposed construction alleges, without support, that "user information" is also called "user data" or "user traffic." Defendants then argue, without support, that "user data," "user traffic," and "bearer traffic" are used interchangeably. Defendants' unsupported assertions are incorrect. As initial matter, "bearer traffic" appears nowhere in the '883 patent and defendants provide no explanation for the genesis of this undefined and unsupported term. Furthermore, the claims are directed to the management of signalling data channels. Defendants' unsupported construction would erase the fundamental distinction provided by the patent: "Data channels are used for carrying signalling or data traffic while bearer channels are used for carrying user traffic." *See* Ex. 1,[2] col. 5:59-62. Nothing in the specification supports equating "user traffic" or "bearer traffic" (whatever that undefined term means) with "user data" or "user information."[3]

### B. "Signalling Data Channel" and "Signalling Data"

---

[2] Unless otherwise noted, cited exhibits refer to those annexed to the Op. Br.

[3] Moreover, defendants' extrinsic evidence merely supports the concept that signalling data is different than user information. This distinction does not support defendants' construction.

### 1. "signalling data channel" (claims 1, 3, 4, 5, 6 and 7)

Defendants admit that "signalling data channels" can carry user data. The central dispute is whether to add defendants' proposed limitation that the channels can only carry "sporadic" user data. However, no claim contains a limitation that user data transmission be "sporadic," and the specification teaches that signalling data channels can carry both signalling data and user data with no limitation that they can only carry "sporadic" amounts of either.

C-Cation Tech's proposed construction comes directly from the patent:

> <u>Data channels are used for carrying signalling or data traffic</u> while bearer channels are used for carrying user traffic . . .

Ex. 1, col. 5:59-61 (emphasis added). Defendants dismiss this portion of the specification as "one, isolated line in the specification," but the fact remains that this portion of the specification clearly defines the two types of channels in the patent, and does not impose limitations on the amount or frequency of data that is transmitted. As there is no "sporadic" limitation in the claims, none should be added here.

Moreover, despite defendants' assertion to the contrary, adopting C-Cation Tech's construction of "signalling data channels" would not blur the line between signalling data and bearer traffic channels. Signalling data channels can carry both signalling or data traffic, while a traffic bearer channel carries user traffic only when required.[4] Ex. 1, col. 7:46-49. C-Cation Tech's proposed construction comports with the entirety of the patent specification.

### 2. "signalling data" (claim 1)

Defendants' proposed construction of "signalling data" as "information that establishes

---

[4] For example, in the context of television, a signalling data channel can be used to carry normal data loads (such as the content on television stations), and can also be used to set up a bearer channel when a user has a specific demand not suitable for transmission over a shared signalling data channel (such as a movie on demand that is only transmitted to one user).

and controls channels over which the central controller and remote terminals communicate" is not supported by the claim language or the specification. Indeed, claim 1 provides that the central controller uses signalling data to control remote terminals by commanding the remote terminals to tune to different channels (reassignment). *See, e.g.*, Ex. 1, claim 1, step (e), col. 3:25-28, 3:55-59. As defendants' construction excludes and conflicts with other claim limitations, it should not be adopted.

Further, as set forth in C-Cation Tech's Opening Brief, Figure 9 shows examples of signalling data that do not either establish or control channels. *See* Op. Br. at 13. In response, defendants offer only the unsupported assertion that the commands in Figure 9 "involve establishing and controlling channels." *See* Res. Br.[5] at 9-10. This is incorrect. For example, Figure 9 specifically discloses examples of signalling data in a telephone system embodiment. One such example is a "ringing" message sent by the remote terminal to the central controller. A message sent by a remote terminal (in this case a telephone) to the central controller that it is ringing neither establishes a channel for communication between the remote terminal and the controller, nor controls the channel. It is merely part of a series of messages that are sent between a remote terminal and central controller when a phone call is made to control communications. Accordingly, defendants' definition is too narrow to cover the examples of signalling data provided in the patent specification, and therefore must be rejected. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (en banc).

The extrinsic evidence cited by defendants also fails to support their narrow construction. First, it contradicts the claim language and specification and should be ignored for that reason alone. *See id.* at 1318. Moreover, the definitions cited by the defendants define "signalling" and

---

[5] "Res. Br." refers to Defendants' Responsive Claim Construction Brief, filed as D.I. 188.

4

not "signalling data," as used in the '883 patent. Further, contrary to their proposed construction, defendants' cited definitions of "signalling" concern <u>connections</u> and not <u>channels</u>.

### C. "Remote Terminals" (Claims 1, 3, 4, 6, 7, 10 and 12)

"Remote terminals" are "terminals," or communication devices, that are located "remotely" from the central controller. *See* Op. Br. at 14-16. This definition is entirely consistent with both the specification and the extrinsic evidence indicating how a "terminal" would have been understood by a person of ordinary skill in the art at the time of invention.

Defendants seek to improperly add limitations to this readily understood term, including requiring the remote terminals to communicate "over a specified pair of dedicated signalling data channels and dedicated user traffic channels." Indeed, the specification simply describes terminals as communication devices. *See* Ex. 1, col. 3:14-16; col. 5:24-26. Further, the passage defendants cite as the description of the invention merely states that remote terminals are capable of being assigned to signalling data and traffic-bearing channels. *See id.*, col. 2:4-7.

### D. Channel Assignment

#### 1. "pair of predetermined signalling data channels" (claims 1, 4 and 5)

None of the evidence offered by defendants supports their position that a "pair" of signalling data channels must be "uniquely coupled" or that they must be "specified in a remote terminal and central controller before any attempted communication between the two."

Defendants mistakenly suggest that C-Cation Tech seeks to construe "pair" as "two." *See* Res. Br. at 18. This is incorrect. Instead, C-Cation proposes to construe "pair" as including "a forward signalling data channel and a reverse signalling data channel."

The "uniquely coupled" limitation that defendants seek to add does not appear anywhere in the '883 patent. Indeed, defendants' only "support" is one snippet of a sentence that is taken out of context. *See* Res. Br. at 18. However, that sentence states that "[t]hrough the registration

5

process, the central controller assigns the remote terminal to a group supported by coupling of the specific forward and reverse signalling data channels." Ex. 1, col. 3:47-50. This sentence does not establish that a single forward and reverse signaling data channel are coupled, let alone "uniquely coupled." Rather, it explains that a central controller can group forward and reverse signaling data channels together, and then assign terminals to those grouped channels.

Defendants' "pair of shoes" analogy (*see* Res. Br. at 18) is also misplaced. As the specification makes clear, there is a pool of channels that are available to be assigned, and none have unique characteristics that necessitate coupling specific channels together.[6] *See* Ex. 1, col. 8:44-50.

Similarly, with respect to "predetermined," neither the specification nor the claim language suggests that the "pair of predetermined signalling data channels" must be "specified in a remote terminal and central controller before any attempted communication between the two." The embodiment in the specification that defendants cite provides, in part:

> Initially the remote terminals will listen to a general poll on FD-1
> for registration. If the poll from the central controller is not
> receiving for an extended period of time, the remote terminal will
> try FD-2 channel (toggling between FD-1 and FD-2).

Ex. 1, col. 8:61 to 9:6. The above passage explains that the first attempted communication between the central controller and remote terminals during terminal registration occurs on either of at least two forward signaling data channels, FD-1 and FD-2, and at least two reverse signaling data channels, RD-1 and RD-2. There would be no need to perform this step if the

---

[6] Moreover, while defendants advocate for adding the limitation of "uniquely coupled" into this term, they later argue that by doing so, the claim terms "said predetermined signalling channel" and "said predetermined channel" would be indefinite as ambiguous (*see* Res. Br. at 29). This further militates against adopting their construction. *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1373 n.12 (Fed. Cir. 2008).

6

precise pair was known before any attempted communication. Instead, the precise pair is determined as part of the attempted communication and depends on which channels are actually functional at the time of registration.

Defendants also cite to the prosecution history in support of their limiting construction. *See* Res. Br. at 17-18. However, the applicant made no comment during prosecution regarding the insertion of the disputed term into the amended step (a). *See* Res. Br. Ex. 7 ('883 Amendment "A" (Oct. 1, 1995)) at 13 ("Thus Grauel teaches that each cellular telephone is connected to the base radio station (Fig. 1) by a single signalling data channel. . . . That is, Grauel does not teach a plurality of signalling data channels as recited in amended claim 1(a)."); *see also id*. at 15. Thus, the prosecution history also fails to support defendants' construction. *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1276 (Fed. Cir. 2012) ("it is particularly important not to limit claim scope based on statements made during prosecution 'absent a clear disavowal or contrary definition.'").

> **2. "predetermined signalling data channels of a plurality of signalling data channels" / "each of said plurality of remote terminals can be assigned to any pair of said plurality of signalling data channels" (claim 6)**

Defendants do not address these phrases separately from "pair of predetermined signalling data channels" recited in claim 1. For the reasons set forth above (*see supra*, Section II.D.1) and in C-Cation Tech's Opening Brief (*see* Op. Br. at 16-19), defendants' proposed constructions should be rejected.

### E. Monitoring and Reassignment of Channels

> **1. "monitoring the status of a plurality of the signalling data channels in use . . . for the usability of said signalling data channels" (claim 1(b))**

Replacing the claim term "usability" with the phrase "conditions that preclude those channels from communicating the signalling data," as defendants propose, would result in the

7

central controller only seeking to determine whether communication on a given channel is possible. However, dependent claim 3 recites that the "monitoring" step of claim 1 includes examining the traffic load requirements (step (a)), collision counts (step (b)) and transmission error counts (step (c)), and "<u>sensing the status of said plurality of signalling data channels in use for failure</u>" (step (d) (emphasis added)). Thus, limiting the monitoring step of claim 1(b) to making a single determination of whether there is failure, as defendants propose, would improperly read out three of the four additional monitoring steps of dependent claim 3. *See, e.g.*, *Alcon Research, LTD. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is axiomatic that a dependent claim cannot be broader than the claim from which it depends.").

### 2. "determining whether one of said plurality of remote terminals needs to be reassigned" (claim 1(c))

Defendants' proposal to construe the "determining" step as a binary determination of whether communication is possible would read out dependent claim 4's recitation that the determining step of claim 1 includes sensing the status of the signalling data channel being used by a remote terminal for both overload (step (a)), and failure (step (b)). Accordingly, defendants' proposed construction would improperly result in the determining step of claim 1 being construed more narrowly than the determining step in dependent claim 4. *See Alcon Research*, 687 F.3d at 1367.

Defendants' assertion that the term "one of said plurality of remote terminals" should be construed as "a specific remote terminal" is also unsupported. First, the phrase is clear on its face. Further, the prosecution history to which defendants cite does not support limiting the phrase beyond its ordinary meaning. Rather, it simply conveys that the Grauel patent does not teach selecting mobile radio stations (whether one or more) for reassignment. *See* Res. Br. Ex. 7

8

at 14-15. This does not come close to a clear disavowal of claim scope needed for the Court to adopt defendants' construction. *See Digital-Vending Servs.*, 672 F.3d at 1276.

### 3. "is available" (claims 1 and 5)

Defendants' assertion that easily understood phrase "is available" requires construction hinges on their assertion that C-Cation Tech confuses "availability" and "usability." As explained above (*see supra*, Sections II.E.1 and 2), this is incorrect.

### 4. "said predetermined signalling data channel" (claims 1 and 4) / "said predetermined channel" (claims 1 and 5)

Defendants' assertion that these terms are indefinite hinges on their insertion of "uniquely coupled" into claim 1. As explained above (*see supra*, Section II.D.1), it is improper to add this limitation. Moreover, defendants' citation to MPEP §2173.05(e) provides that "[i]f the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite." *Id.* Here, the disputed terms would be readily understood by one skilled in the art as referring to either one of the "pair of predetermined signalling data channels" recited earlier in claim 1. They are therefore not indefinite in accordance with both the controlling case law and the MPEP. *See* Op. Br. at 24-26 (explaining controlling case law).

Finally, defendants' reliance on *Synqor, Inc. v. Artesyn Technologies,Inc.*, 2:07-CV-497-TJW-CE, 2010 WL 2991037 (E.D. Tex. July 26, 2010) is misplaced. The *Synquor* court notes at the outset that both the patentee and the accused infringers agreed the claim was inoperable as written, and that addressing the antecedent basis issue required rewriting the claim. *Id.* at *26.

### 5. "reassigning by said central controller said remote terminal to a different and suitable signalling data channel" (claim 1)

Defendants admit that they seek to add limitations to the "reassigning" step of claim 1, but assert that this is proper because the preceding steps require "monitoring" and "determining." *See* Res. Br. at 23. Thus, defendants' construction is merely another attempt at adding the

9

limitations it has no support for adding to the "monitoring" and "determining" steps to the "reassigning" step, and defendants have provided no justification for doing so.

### 6. "new signalling data channel" (claim 5)

Defendants provide no reason as to how "unused" is different than "new," or why their proposed construction would be more easily understood. As explained in C-Cation Tech's Opening Brief, there is no reason to construe this term. *See* Op. Br. at 27.

**F. Polling and Resolving Contention (claims 6 and 7)**

#### 1. "polling a plurality of said plurality of remote terminals simultaneously" (claim 6)

Defendants propose that the term "plurality" should mean "all" instead of its common definition of "two or more." However, it is well settled that "plurality" means "all" only when there is a clear disavowal of claim scope, which is not the case here. *See ResQNet.Com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003) ("'plurality does not mean 'all'" where there were no "expressions of manifest exclusion of restriction, representing a clear disavowal of claim scope."). Moreover, the specification teaches that the central controller can poll either all remote terminals assigned to a channel or subgroups of terminals. *See* Ex. 1, Fig. 10.

#### 2. "resolving contention . . . by said central controller if there is a pending request from more than one remote terminal on the same signalling data channel" (claim 6)

Defendants' proposed construction for the phrase recited in step (c) of claim 6 seeks to improperly import limitations that purportedly appear in the specification, including "selective polling." However, polling, let alone selective polling, is not recited in step (c) of claim 6. The most relevant indication of how a claim should be construed is the claim language itself. *See Phillips*, 415 F.3d at 1314. Defendants' attempt to add several limitations that purportedly appear in the specification should be rejected. *See* Op. Br. at 29-30.

10

Dated:   April 12, 2013 Respectfully submitted,

/s/ Sam Baxter

Lewis V. Popovski
Jeffrey S. Ginsberg
Merri C. Moken
David J. Kaplan
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
Tel.: (212) 425-7200
Fax: (212) 425-5288
lpopovski@kenyon.com
jginsberg@kenyon.com
mmoken@kenyon.com
djkaplan@kenyon.com

Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9099

John F. Garvish, II
Texas State Bar No. 24043681
jgarvish@mckoolsmith.com
MCKOOL SMITH, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744


*Attorneys for Plaintiff C-Cation Technologies, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on April 12, 2013 all counsel of record were served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By:  */s/ John Garvish*

John F. Garvish, II