## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

C-CATION TECHNOLOGIES, LLC,

<em>Plaintiff</em>,

v.

COMCAST CORPORATION, et al.

<em>Defendants</em>.

**Case No. 2:11-CV-30- JRG-RSP**

## CORRECTED JOINT FINAL PRE-TRIAL ORDER[1]

This case came before the court at a pre-trial management conference held on

November 13, 2013, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil

Procedure.

## I.    COUNSEL FOR THE PARTIES

**Attorneys for Plaintiff C-Cation Technologies, LLC ("C-Cation Tech"):**

Samuel Baxter
Texas State Bar No. 01938000
**McKool Smith, P.C.**
104 East Houston St., Suite 300
Marshall, TX 75670
(903) 923-9000  (Telephone)
(903) 923-9099  (Facsimile)
sbaxter@mckoolsmith.com


John F. Garvish , II
Texas State Bar No. 24043681
**McKool Smith, P.C.**
300 W 6th St., Ste 1700
Austin, TX 78701
(512) 692-8731  (Telephone)

---

[1] This Corrected Joint Final Pre-Trial Order replaces the parties' Joint Final Pre-Trial Oder (Dkt. 340).

(512) 692-8744  (Facsimile)
jgarvish@mckoolsmith.com
Lewis V. Popovski – Lead Counsel (*admitted Pro Hac Vice*)
lpopovski@kenyon.com
Jeffrey S Ginsberg (*admitted Pro Hac Vice*)
jginsberg@kenyon.com
Sheila Mortazavi (*admitted Pro Hac Vice*)
smortazavi@kenyon.com
James W. Galbraith (*admitted Pro Hac Vice*)
jgalbraith@kenyon.com
Merri C. Moken (*admitted Pro Hac Vice*)
mmoken@kenyon.com
David J. Kaplan (*admitted Pro Hac Vice*)
djkaplan@kenyon.com
Aaron Jacob Zakem (*admitted Pro Hac Vice*)
azakem@kenyon.com
Karen I. Leyva (*admitted Pro Hac Vice*)
kleyva@kenyon.com
**KENYON & KENYON LLP**
One Broadway
New York, NY 10004
(212) 425-7200 (Telephone)
(212) 425-5288 (Facsimile)


**Attorneys for Defendants Comcast Cable Communications, LLC, and Comcast of Houston,
LLC ("Comcast"):**

Robert Van Nest (lead counsel)
Brian L. Ferrall
Leo L. Lam
Ryan K. Wong
Chris J. Young
Daniel W. Gordon
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA  94111-1809
Telephone:  (415) 391-5400

Deron R. Dacus
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Telephone:  (903) 705-1117

Melissa R. Smith
Gillam & Smith, LLP
303 South Washington Avenue

Marshall, Texas 75670
Telephone:  (903) 934-8450
**Attorneys for Defendant Charter Communications Inc. ("Charter"):**

Michael L. Brody
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60602
Telephone:  (312) 558-5600

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166
Telephone:  (212) 294-6700

Michael E Jones
Allen F. Gardner
POTTER MINTON
110 N. College
Tyler, TX  75702
Telephone:  (903) 597-8311

Thomas L. Duston
Kevin D. Hogg
John R. Labbe
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL  60606-6357
Telephone:  (312) 474-6300

**Attorneys for Defendants Cequel Communications, LLC dba Suddenlink ("Suddenlink")
and Cable One, Inc. ("Cable One"):**

Mitchell D. Lukin
Robinson Vu
Natalie Alfaro
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana
Houston, TX  77002
Telephone:  713-229-1733

Michael C. Smith
Siebman, Burg, Phillips & Smith, LLP
113 East Austin
Marshall, TX  75670
Telephone:  (903) 938-8900


## II.　　THE PARTIES' STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

and 1338(a) because this action arises under the patent laws of the United States, Title 35 of the

United States Code.  Venue and personal jurisdiction are not disputed as proper in this case.


## III.　　NATURE OF ACTION

### A.　　C-Cation Tech's Statement Regarding the Description of the Case

This is a patent infringement case wherein C-Cation Tech alleges that Comcast, Charter

Suddenlink and Cable One (collectively, "Defendants") directly infringe claims 1, 3 and 4 of

U.S. Patent No. 5,563,883 ("the '883 patent" or "the patent-in-suit") through their operation of

cable systems and provision of cable services (telephone, internet and/or television services) to

subscribers in the United States that implement the channel management provisions, particularly

static load balancing and/or dynamic load balancing, of Data-Over-Cable System Interface

Specifications ("DOCSIS") 1.1, 2.0 and/or 3.0, and of their DOCSIS-compliant Cisco, Motorola

and Arris cable modem termination systems ("CMTSs").  C-Cation Tech also alleges that

Comcast has willfully infringed and continues to willfully infringe the '883 patent.  C-Cation

Tech seeks both pre-verdict and post-verdict damages to compensate C-Cation Tech for

Defendants' infringement, as well as permanent injunctive relief against future acts of

infringement by the Defendants.  C-Cation Tech also seeks compensatory damages together with

pre-judgment and post-judgment interest and costs, treble damages for Comcast's willful infringement pursuant to 35 U.S.C. § 284, and attorneys' fees pursuant to 35 U.S.C. § 285.

**B.     Defendants' Statement Regarding the Description of the Case**

This is a patent infringement action.  C-Cation Tech brought this patent infringement action against Defendants.  C-Cation Tech alleges infringement of claims 1, 3, and 4 of the '883 patent, which may be referred to as the "patent-in-suit" or "asserted patent," by one or more of the parties.

**IV.   CONTENTIONS OF THE PARTIES**

**A.     C-Cation Tech's Contentions**

By providing these contentions, C-Cation Tech does not concede that all of these issues are appropriate for trial.  In addition, C-Cation Tech does not waive any of its motions *in limine*.

1.      C-Cation Tech contends that Defendants have infringed and continue to directly infringe claims 1, 3 and/or 4 of the '883 patent under 35 U.S.C. §§ 271 and 281-285 through their operation of cable systems and provision of telephone, internet and television services to subscribers in the United States that implement certain channel management provisions, particularly static load balancing and/or dynamic load balancing, of DOCSIS 1.1, 2.0 and/or 3.0.

2.      The '883 patent's priority date is July 18, 1994, the filing date of U.S. Application No. 276,534.

3.      C-Cation Tech is the owner of all rights, title, and interest in and to the '883 patent and has standing to bring this suit.  C-Cation Tech possesses all rights of recovery under the '883 patent.

4.      C-Cation Tech contends the '883 patent is valid and duly issued.

5.      C-Cation Tech contends that it has been damaged by Defendants' conduct and seeks pre-verdict, post-verdict and post-judgment damages, and an accounting, if necessary, to compensate for the infringement by Defendants, but in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs as fixed by the Court.

6.      C-Cation Tech contends that this case is exceptional and that it is entitled to reasonable attorneys' fees and costs (and consultant fees and costs) pursuant to 35 U.S.C. § 285.

7.      C-Cation Tech contends that Comcast's infringement is and has been willful and thus requests that the Court award to C-Cation Tech enhanced damages as to Comcast's infringement pursuant to 35 U.S.C. § 284, as well as supplemental damages for any continuing post-verdict infringement and an accounting for damages if necessary.

8.      C-Cation Tech contends that it is entitled to a permanent injunction against Defendants.   In the alternative, C-Cation Tech contends that any denial of a permanent injunction should be conditioned on payment of reasonable royalties for future infringement,  including during any stay of an injunction pending appeal.

9.      C-Cation Tech denies Defendants' defenses and counterclaims and contends that they are without merit.

10.    C-Cation Tech denies that defendants are entitled to costs and attorneys' fees.

**B.      Defendants' Contentions**

1.      By providing these Contentions, Defendants do not concede that all of these issues are appropriate for trial. In addition, Defendants do not waive any of their motions *in limine*.

2.      Defendants market and provide video, data, and voice services over their cable TV networks throughout various parts of the United States.

3.      Defendants contend that they do not infringe any of the asserted claims 1, 3, or 4.  In addition, Comcast denies having willfully infringed the patent-in-suit.

4.      Defendants also contend that all of the asserted claims are invalid because they are either anticipated by or rendered obvious by one or more prior art references, or because the specification of the '883 patent does not meet the written description requirements of 35 U.S.C. § 112.  Defendants also contend that the '883 patent is unenforceable because Dr. Cheng, the inventor of the '883 patent, deliberately withheld material prior art from the Patent and Trademark Office ("PTO") during prosecution, and/or because Dr. Cheng falsely declared to the PTO that his failure to pay maintenance fees on the '883 patent when due was "inadvertent," and thereby fraudulently revived the '883 patent after it expired.

5.      Defendants also contend that, even if the asserted claims are found to be valid and infringed, C-Cation Tech is not entitled to the relief it is requesting.  In particular, Defendants contend that C-Cation Tech is barred by laches from recovering the damages it claims, that its proposed royalty base and rate are too high, and that injunctive relief is not available.

6.      Defendants assert that they are entitled to the following declarations:  First, that they do not infringe any of the asserted claims of the '883 patent; second, that the asserted claims of the '883 patent are invalid for failure to meet the conditions of patentability of 35 U.S.C. §§ 102, 103 and 112; and third, that the '883 patent is unenforceable due to the inequitable conduct of Dr. Cheng, the sole inventor of the '883 patent.

7.      Defendants also contend that they are entitled to recover reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285.

## V.   STIPULATIONS AND UNCONTESTED FACTS

The parties agree to the uncontested facts and stipulations in sections A and B, below, and agree that they require no proof at trial, will be read to the jury, and will become part of the evidentiary record in this case:

### A.   Statement of Uncontested Facts

1. Subject matter jurisdiction is proper in this Court.

2. The defendants do not contest that for the purposes of this action, the Court has personal jurisdiction over them.

3. Venue is proper.

4. C-Cation Tech has standing to bring this action in this Court.

5. C-Cation Tech filed its complaint on January 25, 2011, and filed its First Amended Complaint on April 5, 2011.

6. C-Cation Tech is a limited liability company organized and existing under the laws of the State of Texas, with a principal place of business at 150 Purchase Street, Suite 9, Rye, New York.

7. U.S. Patent No. 5,563,883 (sometimes referred to as the "patent-in-suit" or "the '883 patent") issued on October 8, 1996 and is entitled "Dynamic Channel Management and Signalling Method and Apparatus."

8. C-Cation Tech is the assignee of the '883 patent and owns all right, title, and interest in the '883 patent, including the right to sue for any patent infringement.

9. Claims 1, 3 and 4 of the '883 patent are asserted in this case against all Defendants.

10. The asserted claims of U.S. Patent No. 5,563,883 have a priority date and effective U.S. filing date of July 18, 1994, and an expiration date of July 18, 2014.

11.     The named inventor of the '883 patent is Dr. Alexander L. Cheng.

12.     Until January 17, 2011, Dr. Cheng was the sole owner of the '883 patent.

13.     On January 17, 2011, Dr. Cheng assigned all right, title, and interest in the '883 patent to C-Cation Tech.

14.     Defendant Comcast Cable Communications, LLC is a corporation organized under the laws of Delaware with its principal place of business at 1 Comcast Center, Philadelphia, Pennsylvania.

15.     Defendant Comcast of Houston, LLC is a corporation organized under the laws of Delaware with its principal place of business at 1 Comcast Center, Philadelphia, Pennsylvania.

16.     Defendant Charter Communications, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 12405 Powerscourt Drive, Suite 100, St. Louis, Missouri.

17.     Defendant Cable One, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 1314 North 3rd Street, Phoenix, Arizona.

18.     Defendant Cequel Communications LLC dba Suddenlink Communications is a corporation organized under the laws of Delaware with its principal place of business at 12444 Powerscourt Drive, Suite 450, St. Louis, Missouri.

19.     Defendants use and/or operate cable systems to provide telephone and high speed data (internet) services to subscribers.

20.      Defendants' cable systems include cable modem termination systems, or CMTSs, that communicate with cable modems (including embedded multimedia terminal adapters or eMTAs, that include cable modems) located at the subscribers' premises to provide telephone and data (internet) services.

8

21.     Defendants' CMTSs communicate with subscribers' cable modems over, for example, fiber or coaxial cable, using multiple communication channels.

22.     Multiple cable modems typically use each channel.

23.     Defendant Comcast has provided telephone and internet services to subscribers using CMTSs manufactured by Cisco, ARRIS, and Motorola.

24.     Defendant Charter has provided telephone and internet services to subscribers using CMTSs manufactured by Cisco and ARRIS.

25.     Defendant Suddenlink provides telephone and internet services to subscribers using CMTSs manufactured by Cisco.

26.     Defendant Cable One provides telephone and internet services to subscribers using CMTSs manufactured by Cisco and ARRIS.

### B.     Agreed Upon Trial Procedure Stipulations[2]

1.     The parties agree to decrease the number of exhibits on their respective exhibit lists and will exchange amended exhibit lists and objections on dates to be agreed upon by the parties.

2.     The parties agree to decrease their deposition designations and will exchange amended designations and objections on dates to be agreed upon by the parties.

3.     The parties agree to continue to meet and confer in an attempt to resolve their objections to each other's deposition designations and exhibits.  The parties agree to endeavor to enter into stipulations as to the authenticity and admissibility of produced documents.

---

[2] The parties have made certain objections to certain deposition designations.  Accordingly, the stipulations in this section regarding treatment of deposition designations only apply to the extent the deposition designations are allowed to be used at trial.

4.      To the extent the deposition testimony is admissible, a party's decision not to introduce some or all of the deposition testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

5.      For those depositions that have been videotaped, to the extent the deposition testimony is admissible, a party may introduce the deposition excerpt by videotape or by reading in the transcript, depending on the Court's preference.

6.      Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

7.      Each party reserves the right to use as counter-designation any testimony designated by any other party (whether as a designation or a counter-designation), even if not separately listed as a counter-designation.

8.      The parties agree that there is no exchange of demonstratives to be used for cross or redirect witnesses.  If a party provides a binder of exhibits to a witness prior to examination, the party will provide one copy to each other party.

9.      Subject to any requirements adopted by the Court, the listing of a witness on a party's pre-trial witness list does not require that party to call that witness to testify, and does not necessarily mean that the listing party has the power to compel the live testimony of that witness.

10.      Subject to the remaining provisions of this Order, and except for impeachment exhibits, no party may add to its exhibit list or use at trial an exhibit not present on its list absent good cause.  Each party may use exhibits from any other party's trial exhibit list, even if not separately listed on its own exhibit list.  Recognizing that certain exhibits may be objectionable depending on how the exhibit is used, the parties agree that exhibit objections cannot be

circumvented by relying on a version of the exhibit on the opposing party's exhibit list.  The demonstrative exhibits the parties intend to use at trial do not need to be included on their respective exhibit lists.  The parties also agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document.

11.     The parties will exchange copies of all documentary demonstratives, including, but not limited to, graphics, slides and animations, that they plan to use at trial for use during direct examination—but not for cross-examination—by 8:00 p.m. the night before their intended use.  At that time, the parties will also exchange binders comprising color copies of these demonstratives.   In other words, if a demonstrative will be used on a Wednesday, it must be provided in color hard copy in a binder and electronically exchanged in a format that will allow visualization of any animations by 8:00 p.m. on the previous Tuesday.  The parties shall exchange objections to these demonstratives by 10:00 p.m. on the day the demonstratives are received, and attempt to resolve those objections.   Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

12.     The parties will make available for inspection all non-documentary demonstratives or live product demonstrations, such as physical exhibits, physical prior art or physical products, they plan to use at trial for use during direct examination—but not for cross-examination—by 8:00 p.m. two nights before their intended use.  In other words, if a non-documentary demonstrative will be used on a Wednesday, it must be exchanged or made available by 8:00 pm on the previous Monday.  The parties shall exchange objections to these non-documentary demonstratives or live product demonstrations by 7:00 p.m. the night before their

intended use.  Demonstratives made available for inspection will not be used by the opposing party prior to being used by the disclosing party.

13.     The parties agree to identify their final lists of witnesses no later than 9:00 a.m. CST on December 3.

14.     The parties agree that any exhibit listed on a party's own exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury by that party during opening statements if the exhibit will be the subject of testimony and explained to the jury by a witness at trial.

15.     The parties will exchange copies of all documentary demonstratives and make available for inspection all non-documentary demonstratives to be shown to the jury during opening statements by 5:00 p.m. the night before opening statements.  At that time, the parties will exchange binders comprising color copies of the documentary demonstratives, and will also exchange said demonstratives in an electronic format that will allow visualization of any animations.  The parties shall exchange objections to these demonstratives by 7:00 p.m. on the day the demonstratives are received or inspected.

## C.     C-Cation Tech's Proposed Trial Procedure Stipulations

16.     The parties will exchange lists of exhibits they intend to use during direct examination—but not for cross-examination— by 8:00 p.m. the night before their intended use. At that time, the parties will also exchange binders comprising, to the extent applicable, color copies of these exhibits.

17.     The parties will identify witnesses to be called live and by deposition, and the order in which they will be called, 72 hours in advance of the day of trial during which the witnesses will testify. In other words, if a witness will testify on a Wednesday, the witness must be identified by 9 a.m. on the previous Sunday.

### D.     Defendants' Proposed Stipulations

1.      The parties agree to meet and confer to limit the number of designated objections, long pauses between the end of an answer and the start of the next question, or colloquy to be played to the jury.

2.      Excepting rebuttal witnesses and rebuttal deposition designations, the parties agree to provide a list of witnesses to testify, and a list of any deposition designations (by page and line number) to be played by 7:00 p.m. two days before the witness is to take the stand or the designations are to be played (i.e., the list Sunday at 7:00 p.m. specifies Tuesday's witnesses and designations).  Together with this list, the offering party will provide a list of exhibits to be used with each identified witness.  The other party(ies) will provide all of their designations (counter or otherwise) and runtimes for those witnesses to be presented via deposition by 7:00 p.m. the next day.  The live witnesses will be called in the order listed.  The parties agree to meet and confer regarding any objections to such deposition designations no later than 9:00 p.m. the evening prior to the day the witness is to take the stand, and will endeavor to reach an agreement before raising objections with the Court.

3.      The parties agree to provide a list of rebuttal witnesses to take the stand and a list of any rebuttal deposition designations (by page and line number) and runtimes to be played by 5:00 p.m. the night before the day the witness is to take the stand or the designations are to be played.  The other party(ies) will provide all of their designations (counter or otherwise) and runtimes for those witnesses to be presented via deposition by 8:00 p.m. the same day.  The live rebuttal witnesses will be called in the order listed.  The parties agree to meet and confer regarding any objections to such deposition designations before raising objections with the Court.

4.     Each party will notify the other of its intent to rest its case by 8:00 pm two days before it will rest (*e.g.*, if C-Cation Tech believes it will rest on Wednesday, it must provide notice by 8:00 pm Monday).

## VI.     CONTESTED ISSUES OF FACT AND LAW

### A.     C-Cation Tech's Statement of Contested Issues of Fact and Law

By providing this statement, C-Cation Tech does not concede that all of these issues are appropriate for trial.  In addition, C-Cation Tech does not waive any of its pending motions.

1.     Whether Defendants directly infringe claims 1, 3, and/or 4 of the '883 patent.

2.     Whether Comcast willfully infringed claims 1, 3 and/or 4 of the '883 patent.

3.     Whether C-Cation Tech is entitled to damages to compensate for Defendants' infringement, and, if so, the dollar amount of pre-verdict and post-verdict damages adequate to compensate for the infringement of the '883 patent, but in no event less than a reasonable royalty.

4.     Whether C-Cation Tech is entitled to enhanced damages for Comcast's willful infringement pursuant to 35 U.S.C. § 284, and, if so, the dollar amount of the enhancement.

5.     Whether C-Cation Tech is entitled to costs, and, if so, the dollar amount of its costs.

6.     Whether C-Cation Tech is entitled to pre-judgment and post-judgment interest, and, if so, the dollar amount of prejudgment and post-judgment interest.

7.     Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether C-Cation Tech is entitled to an award of attorneys' fees.

8.     Whether C-Cation Tech is entitled to a permanent injunction against Defendants, requiring Defendants to refrain from directly infringing, contributing to, or inducing the infringement of the '883 patent.

9.      Whether any denial of a permanent injunction should be conditioned on payment of reasonable royalties for future infringement, and if so, the royalty amount set for future infringement and a means or mechanism to account for future royalty payments, including during any stay of an injunction pending appeal.

10.     Whether Defendants proved by clear and convincing evidence that the asserted claims of the '883 patent are invalid because they are anticipated by Defendants' prior art references under 35 U.S.C. § 102.

11.     Whether Defendants proved by clear and convincing evidence that the asserted claims of the '883 patent are obvious under 35 U.S.C. § 103 in view of Defendants' prior art references.

12.     Whether Defendants proved by clear and convincing evidence that the asserted claims of the '883 patent are invalid for lack of written description under 35 U.S.C. § 112.

13.     Whether Defendants proved by clear and convincing evidence that the asserted claims of the '883 patent are unenforceable because of inequitable conduct.

14.     Whether Defendants proved by a preponderance of the evidence their defenses and counterclaims of waiver, laches, acquiescence, estoppel, patent exhaustion, and lack of standing.

15.     Whether, between January 25, 2005 and present, defendant's cable systems have included CMTSs manufactured by Cisco Systems, Inc. (sometimes referred to as Cisco), ARRIS Group, Inc. (sometimes referred to as ARRIS) and Motorola Mobility, LLC (sometimes referred to as Motorola).

16.     Whether defendant Comcast provides television features to subscribers using CMTSs manufactured by Cisco and Arris.

17.     Whether, between January 25, 2005 and the present, defendants' cable systems have included the ability to load balance channels that the cable modems and the CMTS use to communicate with each other.

18.     Whether multiple cable modems are typically assigned to each communication channel.

19.     Whether load balancing the communication channels between the CMTS and the cable modems is done in part to more evenly distribute subscribers' bandwidth usage across the available channels.

20.     Whether Defendants' cable systems monitor the number of cable modems on each channel.

21.     Whether Defendants' cable systems monitor the degree to which each channel is utilized as a percentage of the channels available capacity.

22.     Whether, when load balancing is enabled, defendants' cable systems can assign specific cable modems to communicate with the CMTS using a different upstream and/or downstream communication channel from those to which they were previously assigned.

23.     Whether the foregoing assignment is based, at least in part, on either the number of cable modems on each channel or the degree to which each channel is utilized.

24.     Whether, for periods between January 25, 2005 and present, defendant Comcast has enabled load balancing features on its cable systems.

25.     Whether, for periods between January 25, 2005 and present, defendant Charter has enabled load balancing features on its cable systems.

26.     Whether, for periods between January 25, 2005 and present, defendant Suddenlink has enabled load balancing features on its cable systems.

27.     Whether, for periods between January 25, 2005 and present, defendant Cable One has enabled load balancing features on its Cisco and ARRIS CMTSs.

28.     Any issues of fact that are determined to constitute issues of law are hereby designated as such, and vice versa.

**B.     Defendants' Statement of Contested Issues of Fact and Law[3]**

1.     Whether Defendants have directly infringed one or more of the asserted claims 1, 3, or 4 of the '883 patent.

2.     Whether C-Cation Tech is entitled to damages to compensate for Defendants' alleged infringement of the asserted claims, and if so, the dollar amount adequate to compensate C-Cation Tech for such infringement.

3.     Whether any infringement by Comcast has been willful.

4.     Whether C-Cation Tech is entitled to enhanced damages (up to three times the amount found or assessed under 35 U.S.C. § 284) to compensate for the allegedly willful nature of Comcast's alleged infringement, and if so, the dollar amount adequate to compensate C-Cation Tech for such infringement.

5.     Whether C-Cation Tech is entitled to an injunction to enjoin any further alleged infringement or a running royalty to compensate it for any continuing infringement.

6.     Whether this case is an exceptional case entitling C-Cation Tech or the Defendants to an award of attorney fees under 35 U.S.C. § 285.

7.     Whether C-Cation Tech is entitled to an award of prejudgment interest.

8.     Whether C-Cation Tech or the Defendants are entitled to costs and, if so, the dollar amount of such costs.

---

[3] The issues identified below are made subject to the parties' pending motions and without waiver of objection as to whether the issues have been properly pleaded, disclosed, or whether related evidence is admissible.

9.     Whether the '883 patent is unenforceable due to Dr. Cheng's alleged

nondisclosure of material prior art to the Patent and Trademark Office.

10.     Whether the '883 patent is unenforceable due to Dr. Cheng's alleged fraudulent

revival of the '883 patent after it lapsed due to his deliberate failure to pay its maintenance fees.

11.     Whether one or more of the asserted claims are invalid for failing to satisfy 35

U.S.C. §§ 102, 103, or 112.

12.     Whether the following references are prior art:

- U.S. Patent No. 5,355,374 ("Hester")
- U.S. Patent No. 4,533,948 ("McNamara")
- "MetroNet: An Overview of a CATV Regional Data Network" ("MetroNet")
- U.S. Patent No. 5,225,902 ("McMullan")
- MPT 1327 (Jan. 1988, revised and reprinted Nov. 1991)
- MPT 1343 (Jan. 1988, revised and reprinted Sept. 1991)
- U.S. Patent No. 4,584,684 ("Nagasawa")
- U.S. Patent No. 5,594,726 ("Thompson")
- U.S. Patent No. 4,494,111 ("Rocci")
- U.S. Patent No. 4,573,206A ("Grauel")
- U.S. Patent No. 4,920,533 ("Dufresne")
- David Charles Feldmeier, A CATV-Based High-Speed Packet-Switching Network Design (April 1986) ("Feldmeier")
- Semir Sirazi, TRIINET: A Demand-Adaptive Media-Access Protocol For Metropolitan Area Networks (May 1986) ("Sirazi")
- U.S. Patent No. 4,210,780 ("Hopkins")
- RFC 1065
- RFC 1066
- RFC 1067
- U.S. Patent No. 5,471,474 ("Grobicki")
- U.S. Patent No. 5,421,030 ("Baran")
- U.S. Patent No. 4,210,780 ("Hopkins")
- U.S. Patent No. 4,868,811 ("Suzuki")
- U.S. Patent No. 5,155,590 ("Beyers")
- U.S. Patent No. 5,134,709
- U.S. Patent No. 5,235,631
- U.S. Patent No. 5,276,908
- U.S. Patent No. 4,868,811
- U.S. Patent No. 4,870,408 ("Zdunek")

18

C.     **Issues to Be Decided by the Court**

The parties agree that all equitable issues require determination by the Court, should not be submitted to the jury, and the jury should not be advised of the issues or evidence relating solely thereto.

The parties agree that all issues related to C-Cation Tech's claim for injunctive relief, require determination by the Court, should not be submitted to the jury, and the jury should not be advised of the request for an injunction.

VII.   **LIST OF WITNESSES**

A.     **C-Cation Tech's Witness List is attached as Exhibit A**

B.     **Defendants' Witness List is attached as Exhibit B**

C.     **C-Cation Tech's Deposition Designations are attached as Exhibit C**

D.     **Defendants' Deposition Designations are attached as Exhibit D**

VIII.  **LIST OF EXHIBITS**

A.     **C-Cation Tech's Trial Exhibit List is attached as Exhibit E**

B.     **Defendants' Trial Exhibit List is attached as Exhibit F**

IX.    **LIST OF ANY PENDING MOTIONS**

D.I. 122:  Defendant Comcast's Motion to Dismiss Comcast Defendants Without Prejudice

D.I. 292:  Plaintiff C-Cation Technologies, LLC's Motion for Summary Judgment Concerning Defendants' Counterclaims and Defenses of Inequitable Conduct

D.I. 294:  Plaintiff C-Cation Technologies, LLC's Motion to Strike Expert Reports and Exclude Testimony

D.I. 296:  Defendants' Motion to Exclude Certain Opinions of Dr. Chris Heegard

D.I. 302:  Defendants' Amended Motion to Exclude the Testimony of Michael J. Wagner

D.I. 323:  Plaintiff C-Cation Technologies, LLC's Motions *in Limine*

D.I. 325:  Defendants' Corrected Motions *in Limine*

X.      **PROBABLE LENGTH OF TRIAL**

C-Cation Tech requests 14 hours of trial time per side, not including time for opening and closing arguments.

Defendants request 15 hours of trial time per side, not including time for opening and closing arguments.

XI.     **MANAGEMENT CONFERENCE LIMITATIONS**

To be determined following the November 13, 2013 Pretrial Conference.

XII.    **AGREEMENTS AMONG THE PARTIES**

1.      The parties agree (i) not to adduce evidence or argument at trial that pertains solely to the subject matter of non-asserted patent claims, and (ii) to de-designate all testimony and remove from their exhibit list all documents that relate solely to the subject matter of the non-asserted claims.

2.      Subject to the following limitations, the parties shall not present any evidence or argument concerning licenses or settlement agreements for purposes of calculating a reasonable royalty, other than evidence or argument related to the seven licenses expressly analyzed by Dr. Reddy and Mr. Bakewell in their expert reports.  Notwithstanding this stipulation, the parties acknowledge that the admissibility of the seven licenses discussed by Dr. Reddy and Mr. Bakewell in their reports remains subject to the resolution of Plaintiff's pending motion to strike (D.I. 294 at 12-15).  This stipulation shall not itself prevent the parties from presenting evidence or argument concerning any settlement and license agreement between Plaintiff and any Defendant in relation to the present litigation.  However, the parties also acknowledge that the admissibility of any settlement or license agreements in the present litigation remains subject to the resolution of Defendants' motion *in limine* no. 4 (D.I. 325 at 4-5).

3.      C-Cation Tech will not adduce any evidence or argument at trial that Defendants have copied the patented invention or that Defendants, with the exception of Comcast, willfully infringed the '883 patent and do not respect intellectual property.

4.      The parties shall not present before the jury evidence or argument solely related to Comcast's Fifth Affirmative Defense of Equitable Estoppel which arises out of the 2002-2003 litigation and settlement between Comcast and C-cation, Inc. in the Southern District of New York, or Comcast's Sixth Affirmative Defense of License, Release and/or Covenant Not to Sue which also arises out of the 2003 Settlement and License Agreement between Comcast and C-cation, Inc.

5.      The parties shall not refer to plaintiff as a "patent troll" or "shell company," and shall not refer to plaintiff, its members or shareholders including Dr. Alexander Cheng, or its related company C-cation Inc. as "alter egos" of each other.

6.      The parties shall not present before the jury evidence or argument related solely to the Defendants' defenses of inequitable conduct and/or intervening rights.  However, this stipulation shall not prevent a party from introducing evidence or presenting argument that is relevant to any other issue before the jury.

## XIII.  **CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;[4]

(2)      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with and not altered by agreement or otherwise;[5]

---

[4]     This representation is subject to any matters addressed in pending motions and/or objections.

[5]     *See* n. 4, *supra*.

(3)     Each exhibit in the List of Exhibits herein:

    (a)     is in existence;

    (b)     is numbered; and

    (c)     has been disclosed and shown to opposing counsel.

Dated: November 8, 2013

Respectfully submitted by:

*/s/ Sam F. Baxter, with permission by Michael E. Jones*

Lewis V. Popovski
Jeffrey S. Ginsberg
Sheila Mortazavi
Merri C. Moken
David J. Kaplan
Aaron J. Zakem
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
Tel.: (212) 425-7200
Fax: (212) 425-5288
lpopovski@kenyon.com
jginsberg@kenyon.com
smortazavi@kenyon.com
mmoken@kenyon.com
djkaplan@kenyon.com
azakem@kenyon.com

Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9099

John F. Garvish, II
Texas State Bar No. 24043681
jgarvish@mckoolsmith.com
MCKOOL SMITH, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

*Attorneys for C-Cation Technologies, LLC*

Attorneys for Defendant(s)

By:  */s/ Robert Van Nest, with permission by Michael E. Jones*

_____

Robert Van Nest
rvannest@kvn.com
Brian L. Ferrall
bferrall@kvn.com
Leo L. Lam
llam@kvn.com
Ryan K. Wong
rwong@kvn.com
Daniel W. Gordon
dgordon@kvn.com
Chris J. Young
cyoung@kvn.com
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA  94111-1809
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Deron R. Dacus
ddacus@dacusfirm.com
Texas State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Telephone:  (903) 705-1117
Facsimile:  (903) 581-2543

Melissa R. Smith
Melissa@gillamsmithlaw.com
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450

Attorneys for Defendants
COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF HOUSTON, LLC

*/s/ Michael Brody, with permission by*
By:   *Michael E. Jones*
      Michael E Jones
      SBN: 10929400
      Allen F. Gardner
      SBN: 2403679
      POTTER MINTON
      110 N. College
      Tyler, Texas 75702
      (903) 597-8311
      mikejones@potterminton.com
      allengardner@potterminton.com

      Thomas L. Duston
      Kevin D. Hogg
      John R. Labbe
      Sarah J. Kalemeris
      MARSHALL, GERSTEIN & BORUN LLP
      6300 Willis Tower
      233 South Wacker Drive
      Chicago, Illinois 60606-6357
      (312) 474-6300
      tduston@marshallip.com
      khogg@marshallip.com
      jlabbe@marshallip.com
      skalemeris@marshallip.com

      Michael L. Brody
      Jonathan E. Retsky
      WINSTON & STRAWN LLP
      35 West Wacker Drive
      Chicago, Illinois 60602
      (312) 558-5600

      Krishnan Padmanabhan
      WINSTON & STRAWN LLP
      200 Park Avenue
      New York, NY 10166
      (212) 294-6700
      kpadmanabhan@winston.com

      Attorneys for Defendant
      CHARTER COMMUNICATIONS, INC.

*/s/ Mitchell D. Lukin, with permission by*
By:   *Michael E. Jones*

    Mitchell D. Lukin
    Robinson Vu
    BAKER BOTTS L.L.P.
    One Shell Plaza
    910 Louisiana
    Houston, TX  77002
    Telephone:  713-229-1733

    Michael C. Smith
    Siebman, Burg, Phillips & Smith, LLP
    113 East Austin
    Marshall, TX  75670
    Telephone:  (903) 938-8900

    Attorneys for Defendant CABLE ONE,
    INC. AND SUDDENLINK
    COMMUNICATIONS, LLC DBA
    SUDDENLINK COMMUNICATIONS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 8, 2013.

                     */s/ Michael E. Jones*

26